**CARNIVAL CRUISE LINES, INC., Hal Antillen, N.V., Hal Shipping Ltd., and Wind Surf Limited, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

Slip Op. 98–71.
Court No. 93–10–00691.

United States Court of International Trade.

June 2, 1998.

Paul, Weiss, Rifkind, Wharton & Garrison (Robert E. Montgomery, Jr. and Robert P. Parker ), Washington, DC, for Plaintiffs.

Frank W. Hunger, Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (A. David Lafer and John K. Lapiana ), Washington, DC, for Defendant.

## OPINION

MUSGRAVE, Senior Judge.

In *U.S. Shoe Corp. v. United States,* 907 F.Supp. 408, 19 CIT 1284 (1995) ("*U.S.Shoe* "), this Court held that the Harbor Maintenance Tax ("HMT") was unconstitutional as it applied to exports. The decision was affirmed by the Court of Appeals for the Federal Circuit ("CAFC"), *U.S. Shoe Corp. v. United States,* 15 Fed. Cir. (T) ——, 114 F.3d 1564 (1997), and, finally, by the United States Supreme Court, *United States v. U.S. Shoe Corp.,* —— U.S. ——, 118 S.Ct. 1290,. 140 L.Ed.2d 453 (1998). Not explored, however, was the question of whether the constitutionally flawed statute applied to charges imposed upon shippers for the transportation of passengers.

Plaintiffs brought this action to contest the assessment and collection of harbor maintenance taxes on passenger cruises by defendant, the United States Customs Service ("Customs"). Plaintiffs, Carnival Cruise Lines, Inc. et al. ("Carnival"), contend that cruise passengers should not trigger the imposition of the HMT. The Court finds that transportation services provided to passengers on cruises are not subject to the HMT based on the holding in *U.S. Shoe.*

### Background

Carnival owns and operates fleets of commercial cruise ships. The typical Carnival cruise originates at a specific port where passengers embark and the ship then proceeds to a number of short stops, or layovers, at different ports. The cruise terminates in the final destination port where the passengers disembark. Since the imposition of the HMT in 1987, Customs has been assessing and collecting the fees for all passengers aboard cruises that originate, stop and terminate in HMT-covered ports. Plaintiffs filed a protest of the assessment and collection of the HMT which Customs denied on July 2, 1993. On October 18, 1993, plaintiffs filed a summons and complaint with the Court appealing the protest denial pursuant to 28 U.S.C. § 1581(a) (1988).

Plaintiffs subsequently amended their complaint to incorporate a constitutional

challenge to the HMT. The Court certified the constitutional question for immediate appeal to the CAFC. Carnival, unopposed by Customs, petitioned the CAFC for permission to appeal the order. The CAFC denied the petition to appeal in *Carnival Cruise Lines, Inc. et al. v. United States*, 14 Fed. Cir. (T) ——, 92 F.3d 1203 (1996). Subsequently, in *Carnival Cruise Lines, Inc. et al. v. United States*, 20 CIT ——, 929 F.Supp. 1570 (1996), this Court found that the portions of the HMT that applied to exports were unconstitutional and severable from the remainder of the HMT. Plaintiffs maintain that the HMT, if imposed at all, should only be assessed on cruises that originate or terminate in HMT-covered ports, not on those cruises that originate and terminate in HMT-exempt ports that have layovers at HMT-covered ports.

Plaintiffs also contend that Customs assessed the HMT based on an overvalued transportation charge. The HMT is assessed as .125 percent of the value of the actual charge for transportation paid by the passenger. Customs has interpreted the value of the cruise to include all "embarkation-to-disembarkation" costs as reflected on passenger tickets. Plaintiffs argue that the value of the cruise should only include "waterborne transportation services." Pls.' Mot. for Partial Summ. J. ("Pls.' Mot.") at 27. On March 31, 1998, the Supreme Court, affirming the holding in this Court and the CAFC, struck down the HMT as it applied to exports of cargo in *United States v. U.S. Shoe Corp.*, —— U.S. ——, 118 S.Ct. 1290, 140 L.Ed.2d 453 (1998). In light of this decision, the Court finds that passenger cruises do not trigger HMT liability.

### Standard of Review

■ Under 28 U.S.C. § 2639(a)(1), Customs' decision is "presumed to be correct" and the "burden of proving otherwise shall rest upon the party challenging such deci-

sion."[1] However, the CAFC has found that the presumption of correctness applies solely to factual questions and that this Court's duty is to find the correct result. The duty of the Court to find the correct result stems from both legislative and judicial sources. The CAFC found that "the trial court ... must consider whether the government's classification is correct, both independently and in comparison with the importer's alternative.... [T]he court's duty is to find the correct result, by whatever procedure is best suited to the case at hand." *Jarvis Clark Co. v. United States*, 2 Fed. Cir. (T) 70, 75, 733 F.2d 873, 878 (1984). Pursuant to the statute, "[i]f the Court of International Trade is unable to determine the correct decision on the basis of the evidence presented in any civil action, the court may order a retrial or rehearing for all purposes, or may order such further administrative or adjudicative procedures as the court considers necessary to enable it to reach the correct decision." 28 U.S.C. § 2643(b).[2] The issue before the Court is the interpretation and constitutional integrity of the HMT statute which is a question of law and is reviewed *de novo.*

Both parties have moved for summary judgment. Summary judgment is proper when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." CIT R. 56. The Court finds that there is no genuine issue as to any material fact and therefore the Court has the power to render summary judgment.

### Discussion

■ Lengthy arguments and explanations have been advanced by the parties with respect to the application of HMT fees and the corresponding value of transportation services entailed. The Court finds that the HMT fees are unconstitutional with respect to transportation services provided to cruise

---

1. 28 U.S.C. § 2639(a)(1) (1994).

2. *See Goodman Mfg., Inc. v. United States*, 13 Fed. Cir. (T) ——, ——, 69 F.3d 505, 508 (1995) (the statutory presumption of correctness attaches only to an agency's factual determinations) *and Rollerblade, Inc. v. United States*, 15 Fed. Cir. (T) ——, 112 F.3d 481 (1997) (legal

issues are not afforded deference under 28 U.S.C. § 2639 or under the administrative deference standard promulgated in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

passengers just as cargo was found to be in *U.S. Shoe.* Consequently, the Court does not reach the issues of HMT applicability on exempt and non-exempt ports nor the computation of the value of transportation services.

In 1987, the HMT took effect with the purpose of helping to finance the general maintenance of U.S. ports and specifically the dredging of U.S. ports. S.Rep. No. 99–126, at 9 (1986), *reprinted* in 1986 U.S.C.C.A.N. 6639, 6646–47. The HMT was codified at 26 U.S.C. § 4461 and states:

(a) General Rule

There is hereby imposed a *tax* on any port use.

26 U.S.C. § 4461(a) (1988) (emphasis supplied). The statute defines port use as "(A) the loading of commercial cargo on, or (B) the unloading of commercial cargo from, a commercial vessel at port." 26 U.S.C. § 4462(a)(1) (1988). The term "commercial cargo" is defined as "any cargo transported on a commercial vessel, *including passengers* transported for compensation or hire." 26 U.S.C. § 4462(a)(3)(A) (1988) (emphasis added). In addition, Customs' regulations base the tax assessed on passengers "upon the value of the actual charge for transportation paid by the passenger or on the prevailing charge for comparable service if no actual charge is paid." 19 C.F.R. § 24.24(4)(i) ("transportation services").

Resolution of this issue turns on the holding in *U.S. Shoe,* where the Supreme Court confirmed that levying a tax on the value of commercial cargo loaded for export violated the Export Clause of the Constitution, U.S. Const., Art I, § 9, cl. 5. The quandary is that the statute has equated passengers with cargo, and *U.S. Shoe* has held that taxing exports, or "loading," of cargo violates the Constitution. Therefore, the "loading" of passengers must also violate the Constitution, yet passengers cannot be said to be "exported." The Court finds the solution in

the common meaning of the term embark which is, together with Customs' regulations and findings, synonymous with the term loading. Webster's defines "embark" to mean "to go on board a vessel or a boat for a voyage; as, the troops *embarked* for Lisbon." Webster's New International Dictionary 2nd Edition, at 835 (1956) (emphasis in original).

Under 19 C.F.R. § 4.80a, Customs defines embark to mean

a passenger boarding a vessel for the duration of a specific voyage and *disembark* means a passenger leaving a vessel at the conclusion of a specific voyage. The terms *embark* and *disembark* are not applicable to a passenger going ashore temporarily at a coastwise port who reboards the vessel and departs with it on sailing from the port.

19 C.F.R. § 4.80a(a)(4) (1989) (emphasis in original). Although Customs' definition appears in an unrelated section of its regulations, the Court finds that this definition comports with the common meaning of the terms embark and disembark as well as load and unload with respect to passengers. The Court finds that embark, board and load all refer to the initial activity of passenger movement from port onto the vessel. In congruence with the statute equating cargo to passengers and the ruling in *U.S. Shoe* voiding the HMT on the loading of cargo, the Court finds that the HMT with respect to passengers runs afoul of the Export Clause of the Constitution.

### Conclusion

For the foregoing reasons, the Court finds that transportation services provided to passengers that embark on a cruise are not subject to the HMT.

### JUDGMENT

Upon Consideration of Plaintiff's motion for partial Summary Judgment, defendant's opposition and cross–motion for summary judgment, oral argument and all other papers and proceedings, it is hereby

**ORDERED** that the plaintiff's motion is granted and defendant's cross–motion is denied; and it is further

**ORDERED** that the Harbor Maintenance Tax is unconstitutional as it applies to cruise ship passengers; and it is further

**ORDERED** that defendant shall refund all harbor maintenance tax fees covered under this opinion, with interest.